UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE STICKLES and MICHELE RHODES,

    Plaintiffs,

v.

ATRIA SENIOR LIVING, INC., and ATRIA MANAGEMENT COMPANY, LLC,

    Defendants.

No. C 20-09220 WHA

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this wage-and-hour class action, plaintiffs and defendants move for summary judgment as to employee classification. For the reasons that follow and to the extent stated herein, plaintiffs' motion is **GRANTED**. Defendants' motion is **DENIED**.

## STATEMENT

Plaintiffs George Stickles and Michele Rhodes each worked as a "Community Sales Director" for defendants, Atria Senior Living, Inc., and Atria Management Company, LLC. Plaintiff Stickles worked for defendants from April 2018 to August 2018, and plaintiff Rhodes worked for defendants from October 2019 to April 2020. Defendants are affiliated entities that operate 46 senior living communities throughout California. Defendants lease living spaces at their communities to senior citizens.

Each community employs at least one full-time CSD like plaintiffs. The job description that plaintiffs signed provided, in part, the following essential functions of the CSD position:

- Primarily focused on sales activities outside the community by making sales calls to potential residents, referral sources and other resources.

- Meet or exceed weekly company/community sales standards.

- Respond to telephone inquiries, remotely and in real time where possible, and conduct walk-in and scheduled tours with prospective residents or interested parties.

- Develop and maintain relationships with any and all potential referral sources and conduct on-going field visits.

CSDs report to and are supervised by executive directors, and they have offices at their respective communities. CSDs' ultimate goal is to attract seniors to their communities. They record all their activities in a "Customer Relationship Management" database by choosing from a common set of categories. The database does not track work hours, but it does track each individual CSD's daily activities. Defendants pay flat salaries to CSDs, and defendants pay commissions to CSDs based on the total revenue of their respective communities. Defendants do not pay overtime and do not provide meal or rest breaks to CSDs. But because defendants classify CSDs as "outside salespersons," CSDs are exempt from overtime and meal and rest break rules. Cal. Lab. Code §§ 226.7(e), 1171.

A prior order certified the following class: CSDs who did not sign arbitration agreements and whom defendants classified as exempt outside salespersons from the date plaintiff George Stickles began his employment with defendants (April 9, 2018) through September 29, 2019. Certification applied solely to this issue: whether defendants properly classified CSDs as exempt outside salespersons. Certification of the underlying wage-and-hour claims was held in abeyance.

Plaintiffs and defendants both move for summary judgment as to defendants' ninth affirmative defense, regarding whether CSDs were properly classified as exempt outside salespersons under California law.

2

This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Material facts are those that "might affect the outcome of the suit" under the governing, substantive law. A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Bald assertions that genuine issues of material fact exist are insufficient." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

At summary judgment, the record is viewed in the light most favorable to the nonmoving party, and "'all reasonable inferences that may be drawn from the facts placed before the court must be drawn'" in favor of the nonmoving party. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (citations omitted). The judge does not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255. A trial court may consider only admissible evidence. FRCP 56(c).

**1.    THE OUTSIDE SALESPERSON EXEMPTION.**

In California, employees who are "outside salespersons" are exempt from meal break, rest break, and overtime protections. Cal. Lab. Code §§ 226.7(e), 1171. An "outside salesperson" is an employee who:

> customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities.

Cal. Indus. Welfare Comm'n, Wage Order 5-2001(2)(M). "[U]nder California law, exemptions from statutory mandatory overtime provisions are narrowly construed." *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 795 (1999).

The California Division of Labor Standards Enforcement, which enforces the California wage orders, has explained the rationale behind the exemption:

> [I]t's very difficult to control [outside salespersons'] hours and working conditions. They set their own time, and they're on the road; they call on their customers. Rarely do you know what they're doing on an hour-to-hour basis.

Opinion Letter on Applicability of Outside Salesperson Exemption to Tract Homes Salespersons (Sep. 8, 1998), https://www.dir.ca.gov/dlse/opinions/1998-09-08.pdf.

In *Ramirez*, the California Supreme Court set forth the authoritative construction of California's outside salesperson exemption. *Ramirez* began by contrasting the state exemption with its federal counterpart:

> [T]he federal exemption focuses on defining the employee's "primary function," not on how much work time is spent selling.
>
>    *    *    *
>
> Wage Order No. 7-80, on the other hand, makes no mention of the primary function for which the person is employed. Rather, the state regulation takes a purely quantitative approach, focusing exclusively on whether the individual "works more than half the working time . . . selling . . . or obtaining orders or contracts." State law also differs from the federal regulation in that it does not contain any provision that reclassifies intrinsically nonexempt nonsales work as exempt based on the fact that it is *incidental to* sales. The language of the state exemption only encompasses work directly involved in "selling . . . items or obtaining orders or contracts."

Thereafter, *Ramirez* held that trial courts must inquire into the "realistic requirements" of the job in question. Although the way an employee actually spends his or her time is, perhaps, the most probative indicator of the realistic requirements of the job, the employer's realistic expectations and the actual overall requirements of the job are also relevant. 20 Cal. 4th at 797, 802 (emphasis in original). "Conceivably, were the [district] court to find [defendants'] expectations for [CSDs] unrealistic, no further inquiry would be required to establish liability. More likely, however, is the prospect that some evidence will be required relating to how [CSDs] spent their time." *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 383 (2014).

## 2. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT.

"[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." The nature of an employee's activities and the time an employee spends on each activity are questions of fact. The determination of whether an activity qualifies as exempt is a mixed question of law and fact. So "the trial court should . . . itemize the types of activities that it considers to be sales . . . and the approximate average times that it finds the employee spent on each of these activities." Such itemization allows the trial court to resolve whether the employee is exempt — a question of law. *Ramirez*, 20 Cal. 4th at 794–95, 803 n. 5; *see Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

*First*, this order will consider the nature of each CSD activity and determine whether each activity constitutes outside sales work. *Second*, based on those considerations and the time CSDs spent on each activity, this order will determine whether either side is entitled to judgment as a matter of law on the outside salesperson exemption.

### A. THE NATURE OF CSDS' ACTIVITIES.

*First*, "inquiries" do not constitute sales activities. Inquiries include: responding to phone calls (or emails or text messages) from potential residents; initiating calls, emails, or texts with potential residents; and tending to potential residents who walk into defendants' senior communities. One goal of inquiries is to "schedule . . . tour[s] [of the communities] with [potential residents] as soon as they possibly can come in." Further goals are to "build rapport . . .[,] learn about the person calling[, and] see how you might be able to assist them" (Floyd Dep. 25–26, 30).

Inquiries are not sales because the purpose of inquiries is to *schedule* tours, *learn* about the callers, and *build* rapport, not to "sell[] particular products to a particular person at a particular time . . . [or] to persuade those potential customers to purchase [products] . . . at that very moment." CSDs' efforts during inquiries are "'directed toward stimulating the sales of [the] company generally rather than the consummation of [their] own specific sales.'" At best, CSDs' efforts are *incidental to* sales rather than directly involved in obtaining contracts. And,

work incidental to sales is nonexempt in California. *Moore v. Int'l Cosms. & Perfumes, Inc.*, No. EDCV41179DMGDTBX, 2016 WL 3556610, at *6 (C.D. Cal. June 24, 2016) (Judge Dolly Gee) (citations omitted); *see Dailey v. Just Energy Mktg. Corp.*, No. 14-CV-02012-HSG, 2015 WL 4498430, at *3 (N.D. Cal. July 23, 2015) (Judge Haywood Gilliam, Jr.).[1]

*Second*, tours of senior communities with potential residents cannot constitute outside sales because they occur *inside* the communities (Floyd Dep. 25). Stated differently, CSDs do not perform tours "away from [their] employer's place of business." Wage Order 5-2001(2)(M).

*Third*, "competitive updates" do not constitute sales. Competitive updates are where CSDs "research . . . local competition . . . and report findings" to management. Such activity does not entail attempting to lease living spaces to potential residents. Thus, competitive updates are nonexempt (Stickles Dep., Exh. 5; *see* Bedell Dep. 109).

*Fourth*, "professional sales calls" do not constitute sales. Professional sales calls are in-person meetings with professionals — such as doctors, real estate agents, attorneys, and employees of hospitals and rehabilitation centers — who work with seniors. CSDs' goal is to establish and "advance . . . relationship[s] [with professionals], which, hopefully, will be . . . ongoing relationship[s] where [the professionals] continually . . . send referrals to [defendants]." Thus, CSDs hope that professionals will refer seniors to their communities (Bedell Dep. 52). Of importance are the following additional facts:

- Professionals are not prospective residents. They do not purchase any goods or services from CSDs or defendants (Bedell Dep. 76).
- Neither CSDs nor defendants solicit or enter into agreements with professionals (Floyd Dep. 65).
- CSDs do not earn bonuses or commissions for meeting with professionals (Heffernan Dep. 58).

---

[1] Although they generally occur within defendants' senior communities, inquiries sometimes occur at coffee shops, homes, hospitals, and senior centers (Floyd Dep. 27, 49–50). But, again, the goal of such inquiries is *not* to persuade potential residents to lease apartments. Inquiries constitute general promotion, not sales.

6

The above facts establish that professionals are not defendants' customers. Rather, their role is to *refer* customers (*i.e.*, seniors) to defendants. Because CSDs do not attempt to "convince . . . particular [professionals] to purchase specific [apartments]," professional sales calls do not constitute sales activity. *Moore*, 2016 WL 3556610, at *6; *see Dailey*, 2015 WL 4498430, at *3.

Defendants' counterarguments are unavailing. Foremost, defendants make the following analogy to support that professional sales calls are outside sales: like exempt pharmaceutical salespersons who persuade doctors to prescribe medications to patients, CSDs persuade professionals to refer seniors to defendants.

But that analogy is not sound. By law, patients cannot purchase prescription medications without prescriptions from doctors. Because doctors "directly control which, and how much, of any medication is purchased by patients," doctors are effectively the customers of pharmaceutical salespersons — even though they don't purchase or consume the medications. Thus, pharmaceutical salespersons engage in sales activity with doctors. *Delgado v. Ortho-McNeil, Inc.*, No. SACV 07-00263CJCMLGX, 2009 WL 2781525, at *4 (C.D. Cal. Feb. 6, 2009) (Judge Cormac Carney); *see Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 165 (2012).

Defendants make a similar analogy to medical device sales, but "[t]he medical device industry is heavily regulated like the pharmaceutical industry." *Delgado*, 2009 WL 2781525, at *4. Doctors and hospitals choose what medical devices to purchase for use in patients. Patients have no control over such decisions. That alone distinguishes this action from actions regarding medical device sales (before this district court and others). *See Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2019 WL 5677543, at *4 (N.D. Cal. Oct. 31, 2019) (Judge William Alsup); *Polizos v. Boston Sci. Corp.*, No. SACV0901353JVSRNBX, 2011 WL 13225104, at *7 (C.D. Cal. May 13, 2011) (Judge James Selna).

Here, however, professionals do not control the market for leasing apartments to seniors. So CSDs are free to sell directly to seniors while pharmaceutical salespersons cannot sell directly to patients. That professional referrals may lead to sales more often than do other

7

activities does not change that fact. Professionals, therefore, are not CSDs' customers, and CSDs do not engage in sales when they meet with professionals. *See Burling v. Real Stone Source, LLC*, No. CV-08-43-E-EJL, 2009 WL 1812785, at *4 n. 3 (D. Idaho June 24, 2009) (Judge Edward Lodge); *see also Ross v. Ecolab, Inc.*, No. 13-cv-5097-PJH, 2015 WL 5681323, at *6 (N.D. Cal. Sept. 28, 2015) (Judge Phyllis Hamilton).

*Fifth*, "secondary closes" with potential residents at homes, hospitals, and rehabilitation centers constitute outside sales. CSDs make such visits to potential residents who do not sign a lease after touring a community (*i.e.*, whenever CSDs fail the initial "close"). The goal of the secondary close is "to have the prospective resident agree to schedule a lease signing" (Bedell Dep. 39–40). Thus, CSDs attempt to "persuade those potential customers to purchase [apartments] . . . at that very moment." And, they do so away from their work places. Secondary closes, therefore, are directly related to sales and qualify as exempt work. *Moore*, 2016 WL 3556610, at *6; *see Dailey*, 2015 WL 4498430, at *3.

### B. CSDs ARE NOT EXEMPT OUTSIDE SALESPERSONS.

Only one CSD activity qualifies as outside sales: secondary closes at homes, hospitals, and rehabilitation centers. Thus, for defendants to prove that CSDs are outside salespersons, defendants must demonstrate a realistic requirement that CSDs spend more than 50 percent of work time on secondary closes.

But defendants have not done so. *First*, defendants do not realistically expect CSDs to spend a majority of their time on secondary closes. Defendants expect that, generally, CSDs' interactions with seniors will occur *within* the communities (Bedell Dep. 78). Moreover, defendants expect that "most of the time" that CSDs spend working outside the community will constitute professional sales calls (*ibid.*).

*Second*, the way that CSDs actually spend their time confirms this conclusion. The database that tracks CSD activity shows that over 90 percent of CSD workweeks during the class period have *zero* entries for "home visit" or "hospital/rehab visit" (*i.e.*, secondary closes) (Kriegler Decl. ¶ 10). By contrast, 87 percent of CSD workweeks have at least one "tour"

8

entry, and 50 percent of CSD workweeks have three or more "tour" entries (*ibid.*). In addition, 55 percent of CSD workweeks have at least one entry for "professional sales call" (*ibid.*).

Although this data does not show the hours that CSDs spent on secondary closes, a preponderance of the evidence supports that CSDs spent less than a majority of their time on secondary closes. Defendants fail to raise a genuine dispute of material fact as to the frequency of secondary closes. Thus, defendants' realistic expectations and the activity data demonstrate that CSDs are not outside salespersons — they are nonexempt. *See Martinez*, 231 Cal. App. 4th at 383.

*Third*, defendants counterargue that, unlike other CSDs, "[plaintiffs'] practice[s] diverge[d] from [defendants'] realistic expectations," so plaintiffs "should not thereby be able to evade a valid exemption." *Ramirez*, 20 Cal. 4th at 802. But this order has found that defendants do not realistically expect CSDs to spend a majority of their time on outside sales. So it is irrelevant that plaintiffs may not have hit that mark.

*Fourth*, defendants counterargue that CSDs demonstrate the following "indicia" of outside salespersons:

> (1) "The job was advertised as a sales position and the employee was recruited based on sales experience and abilities."
> (2) "Specialized sales training."
> (3) "Compensation based wholly or in significant part on commissions."
> (4) "Independently soliciting new business."
> (5) "Receiving little or no direct or constant supervision in carrying out daily work tasks."

*Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1262 (C.D. Cal. 2007) (Judge Stephen Wilson) (citation omitted). Specifically, defendants argue that CSDs are hired, in part, based on sales experience, CSDs receive sales training, CSDs solicit new business, and CSDs receive commissions based on their respective communities' revenue. However:

> [that] test has been used by federal courts called upon to interpret California law in cases brought against pharmaceutical companies, in order to determine whether the task of inducing doctors to write prescriptions, or to commit to write prescriptions, could be considered sales activity even though the employee "never literally exchanged pharmaceuticals for consideration." This [district] [c]ourt is faced with a very different situation: [CSDs] who clearly

9

> sell[] actual services at certain times, but who at other times perform[] a distinct service that is not a demonstration or sample of a service being sold.

So, rather than facilitate an analysis of the nature of each distinct CSD activity, the indicia focus on the qualitative nature of the CSD job as a whole. "[G]iven the differences between California law's quantitative approach and federal law's qualitative approach to defining outside salespeople," the indicia are not of significant import here. *Pablo v. ServiceMaster Glob. Holdings, Inc.*, No. C 08-03894 SI, 2011 WL 2470093, at *8 (N.D. Cal. June 20, 2011) (Judge Susan Illston).

Moreover, even if the indicia were of significance here, *Barnick* recognized that the test in "borderline cases" is:

> whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales, his activities are not exempt.

522 F. Supp. 2d at 1263.

This is a borderline case because some of the indicia support that CSDs are non-exempt. As an initial matter, CSDs are subject to significant supervision, which supports non-exempt status. Specifically, CSDs have supervisors to whom they report daily (Bedell Dep. 15; Stickles Dep. 68; Floyd Dep. 32). CSDs share their schedules with their supervisors to ensure their supervisors "know how to find them" (Floyd Dep. 33). Additionally, CSDs often work at their communities, where they schedule and conduct tours (Bedell Dep. 78). These facts conflict with the California DLSE's remark that "[r]arely do you know what [outside salespersons are] doing on an hour-to-hour basis." Opinion Letter, https://www.dir.ca.gov/dlse/opinions/1998-09-08.pdf.

Moreover, as discussed above, CSDs rarely solicit business from seniors (Kriegler Decl. ¶ 10). And, CSDs do not solicit referral agreements from professionals at all (Floyd Dep. 65). Thus, the independent-solicitation factor also supports non-exempt status.

Additionally, given that *Ramirez* cautioned against determining an employee's classification based on "an idealized job description that ha[s] little basis in reality," the fact that the CSD position is advertised as a sales position does little to support exempt status. 20 Cal. 4th at 802. The indicia are not persuasive to the extent that they conflict with California law.

Having established that this is a borderline case, we now analyze the facts under the applicable test outlined in *Barnick*. A federal misclassification action analogous to ours, *Burling*, 2009 WL 1812785, will guide our analysis. *Burling* held that "sales representatives" were not outside salespersons under both the FLSA *and* the *Barnick* test for borderline cases. There, sales representatives did not sell the defendant company's products to consumers. Rather, sales representatives contacted local product-dealers, "established relationship[s] with [the] dealer[s]," and educate[d] [the dealers] and promote[d] the [defendant's] products." Because sales representatives did not have authority to enter into agreements with the dealers, sales representatives hoped that the dealers would later contract directly with the defendant to sell the products to consumers. "[C]omission[s] . . . [were] not tied to any particular sale but instead based on the total amount of sales of [the defendant's] products made by the local dealers . . . in [the sales representatives'] territor[ies]." In sum, "[sales representatives'] sales efforts [were] targeted at creating a network of local dealers and generating a market" for the defendant's products. They "create[d] buzz for the products" to stimulate sales generally rather than consummate their own sales. *Id.* at \*4–\*11.

Here, CSDs' activities are analogous to sales representatives' activities in *Burling*. And, professional referral sources play a role analogous to that of the dealers in *Burling*. To elaborate, CSDs "*[d]evelop and maintain relationships* with any and all potential [professional] referral sources," hoping that those professionals will later refer seniors to their communities (Stickles Dep., Exh. 5) (emphasis added). *See id.* at \*11. CSDs *do not enter into agreements* with or solicit referrals from professional referral sources (Floyd Dep. 65) (emphasis added). *See id.* at \*7. CSDs' *commissions are not tied to any particular sales* but are instead based on the total revenue of their communities (Floyd Dep. 103) (emphasis

11

added). *See ibid.* "This does not mean [CSDs] [make] any sales but, instead, shows a payment structure that provide[s] incentives for [CSDs] to generate sales . . . *through education and promotion* of the products." *Ibid.* (emphasis added). Overall, they "*generate . . . buzz* on the outside" about defendants' communities (Bedell Dep. 55) (emphasis added). *See id.* at *5.

Thus, because CSDs' "efforts are directed toward stimulating the sales of [their] company generally rather than the consummation of [their] own specific sales, [their] activities are not exempt." *Barnick*, 522 F. Supp. 2d at 1263.

*Fifth*, defendants contend that *Christopher*, 567 U.S. at 164, requires this order to construe California's outside salesperson exemption "fairly" rather than narrowly. But only "FLSA exemptions are construed under a 'fair (rather than a 'narrow') interpretation.'" *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 853 (9th Cir. 2021) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)). California law requires this order to construe the exemption narrowly. *Ramirez*, 20 Cal. 4th at 795.[2]

*Sixth*, defendants assert that "even if the [district] court determines that the outside sales exemption cannot be established, [defendants] can still rely on the other exemptions [that they] have asserted to defend against plaintiffs' claims" (Opp. 24). But the mere existence of other possible exemptions does not raise a genuine dispute of material fact. It is defendants' burden to provide evidence supporting an exemption. Defendants' conclusory reference to the administrative exemption will not suffice. In addition, defendants have not shown that other exemptions are suitable for class-wide adjudication. The district court certified the misclassification question on the basis of *only* the outside salesperson exemption. Defendants did not raise (and this order need not consider) any other exemption for purposes of class-wide summary judgment. *See In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2021 WL 3711470, at *5 (N.D. Cal. Aug. 20, 2021) (Judge Haywood Gilliam, Jr.).

\* \* \*

---

[2] This order may look to FLSA decisions for persuasive guidance to determine the definition of "sale" because there is no binding authority defining that term for purposes of the California exemption. By contrast, this order may *not* adopt the FLSA standard to construe the California exemption "fairly" because *Ramirez* is binding authority on that issue.

12

The above analysis regarding the realistic requirements of the CSD position applies to every class member except for those three who have declared that they spent, were required to spend, or were expected to spend more than 50 percent of their time on outside sales. Those class members are Felicia Horkins, Jennifer Hall, and Angelina Nunez. Separate trials will be held for each of those class members on the misclassification issue.

## CONCLUSION

For the foregoing reasons, except as to the three class members listed above, plaintiffs' motion for summary judgment is **GRANTED**. Defendants' motion is **DENIED**. Plaintiffs' evidentiary objections are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: November 23, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE