UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE STICKLES and MICHELE RHODES,<br><br>            Plaintiffs,<br><br>   v.<br><br>ATRIA SENIOR LIVING, INC., and ATRIA MANAGEMENT COMPANY, LLC,<br><br>            Defendants. | No. C 20-09220 WHA<br><br>**ORDER RE MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND ATTORNEY'S FEES, COSTS, SERVICE AWARD, AND SETTLEMENT ADMINISTRATION EXPENSES** |

**INTRODUCTION**

In this wage-and-hour class action, plaintiffs move for final approval of class settlement as well as for related fees, costs, and awards. Defendants do not oppose. For the reasons stated herein, and to the extent stated below, the motions are **GRANTED**.

**STATEMENT**

Our prior orders more fully describe the facts underlying this action. *E.g.*, *Stickles v. Atria Senior Living, Inc.*, 642 F. Supp. 3d 1104, 1108 (N.D. Cal. 2022). In sum, plaintiffs George Stickles and Michele Rhodes worked as "Community Sales Directors" (CSDs) for defendants, Atria Senior Living, Inc. and Atria Management Company, LLC. This action concerns whether defendants improperly classified CSDs such that CSDs were not entitled to overtime and meal-and-rest break rules under California law. Plaintiff Stickles asserts six class

claims for violations of California law, and plaintiff Rhodes asserts a California Private Attorneys General Act ("PAGA") representative claim premised on the same violations.

A class was certified in December 2021 with the following definition: CSDs who did not sign arbitration agreements and whom defendants classified as exempt outside salespersons from April 9, 2018, through September 29, 2019. The class was certified solely to the issue of whether defendants properly classified CSDs as exempt outside salespersons. Both sides subsequently moved for summary judgment on that certified issue, which resolved in plaintiffs' favor in November 2022.

Before the summary judgment motions were decided, defendants also moved to compel arbitration of plaintiff Rhodes's PAGA claim. The representative PAGA claim included as aggrieved employees all CSDs who were classified as exempt outside salespersons from January 27, 2020 through May 2, 2020. As the motions were pending, the parties entered into settlement discussions and moved for approval of a proposed class and PAGA settlement. That settlement was rejected in June 2022, in large part because of an overly broad PAGA claim release (*see* Mem. Supp. Final Approval 4–5, Dkt. No. 125-1). The parties were unable to reach a revised settlement, so the litigation schedule resumed, although the arbitration motion was determined moot with an opportunity to promptly resubmit (Dkt. No. 102). After summary judgment, and following a belated attempt to compel arbitration that was denied, the parties once again moved for approval of class and PAGA settlement. This time, the $1.3 million proposed settlement was deemed satisfactory to proceed at a fairness hearing, and after adjustments to the proposed class notice, an order granted preliminary approval of class and PAGA settlement in April 2023 (Dkt. No. 123).

Of the 73 putative class members initially identified, two opted out of this class action upon notification of class certification in March 2022. It later turned out that of the 71 class members, two did not fall under the class definition as they were not CSDs during the class period, leaving 69 class members (Hayes Decl. ¶¶ 15, 31, Dkt. No. 125-2). Notice of class settlement appears to have reached all 69, as no notices have been deemed undeliverable. No

opt-outs, objections, or calculation disputes have been received (Lee Decl. ¶¶ 4–11, Dkt. No. 125-3).

Plaintiffs now move for final approval of the class settlement and, separately, for attorney's fees, costs, and a class representative service award (Dkt. Nos. 124, 125). This order follows a final fairness hearing on October 10, 2023.

**ANALYSIS**

This order first addresses the merits of the settlement, before determining the fees, costs, and awards that are warranted by such a settlement.

1. **SETTLEMENT.**

"The class action device, while capable of the fair and efficient adjudication of a large number of claims, is also susceptible to abuse and carries with it certain inherent structural risks." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982). As Rule 23(e)(2) prescribes, a district court may grant approval of a settlement that would bind class members only after a hearing and only upon a finding that it is fair, reasonable, and adequate.

Our court of appeals has explained that any such finding under Rule 23(e)(2) "will naturally vary from case to case," but that the eight *Churchill* factors generally guide the assessment, which are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Meanwhile, Rule 23(e)(2) itself, as amended in 2018, requires a district court to scrutinize the settlement for evidence of collusion or conflicts of interest by assessing whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and

3

(D) the proposal treats class members equitably relative to each other. Additional related considerations are laid out in the judge's notice regarding factors to be evaluated for any proposed class settlement, filed February 2022 (Dkt. No. 76).

Plaintiffs' counsel submits that the $1.3 million settlement represents "roughly 35% of the maximum potential recovery" and that "there are significant risks that undercut that [sic] chances of securing a full recovery on each of the claims" (Mem. Supp. Final Approval 15–16; *see* Hayes Decl. ¶¶ 47–66). In particular, plaintiffs cite unsettled law regarding the "outside salesperson" exemption (on which plaintiffs prevailed at summary judgment) presenting a risk on appeal, as well as potential application of an alternative, "administrative" exemption, both of which would deny plaintiffs recovery altogether as both are threshold issues for whether CSDs were misclassified. Beyond those threshold issues, plaintiffs identify further barriers that each specific claim faces, such as the need for granular evidence of specific hours worked by an individual plaintiff to support overtime and meal-and-rest break claims (Mem. Supp. Final Approval 10–14).

Indeed, our order certifying the class was limited to adjudicating a single affirmative defense, and explicitly held certification of the underlying wage-and-hour claims in abeyance. *Stickles v. Atria Senior Living, Inc.*, No. C 20-09220 WHA, 2021 WL 6117702, at *11 (N.D. Cal. Dec. 27, 2021). Our order granting summary judgment in favor of plaintiffs likewise precluded only that affirmative defense, rejecting defendants' assertion of other defenses because defendants "did not raise (and this order need not consider) any other exemption for purposes of class-wide summary judgment." *Stickles*, 642 F. Supp. 3d at 1115. All told, while the litigation so far has managed to preclude a relevant affirmative defense on a classwide basis, each class member faces additional, significant hurdles to ultimately recover on their claims. "Currently, to repeat, only the issue of [outside salesperson] classification glues this class together — future class certification motions on the other claims await," and even "a damages phase could require still more painstaking litigation." *See Kudatsky v. Tyler Techs., Inc.*, No. C 19-07647 WHA, 2021 WL 5356724, at *2–3 (N.D. Cal. Nov. 17, 2021). The first three and the fifth *Churchill* factors therefore support approval of the settlement.

4

Plaintiffs' counsel estimates a "realistic maximum potential recovery of approximately $3,705,718 if Plaintiffs ultimately prevailed on all claims" which "consists of $2,162,160 in unpaid overtime, $960,960 in missed meal-and-rest period premiums, $276,000 in statutory wage statement penalties, $206,098 in statutory waiting time penalties, and $100,500 in PAGA civil penalties" (Hayes Decl. ¶ 41). The settlement amount of $1,300,000 thus represents 35% of that potential maximum. Plaintiffs' counsel is experienced in wage-and-hour actions, and asserts that the settlement here represents an "an excellent result" (Hayes Decl. ¶¶ 4–6, 66). None of our 69 class members opted out of the settlement, nor were any objections received. No government entity participated in this action, so the seventh factor is at best neutral. The remainder of the *Churchill* factors thus weigh in favor of approval. *See Kudatsky*, 2021 WL 5356724, at *3 (approving wage-and-hour settlement for 30.5% recovery of the maximum estimated value).

Distinct from the *Churchill* factors, Rule 23(e)(2) requires "scrutinizing the fee arrangement for potential collusion or unfairness to the class" by an approving district court, among other considerations. *Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021). Importantly, "the class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just.*, 688 F.2d at 624. The settlement administrator explains that when notice was sent to our 69 class members via first-class mail, four were returned. The administrator performed skip traces for updated addresses and re-mailed notices for all four, with no further returns (Lee Decl. ¶¶ 4–7). The notice informed class members about all key aspects of the settlement as previously discussed at preliminary approval, and was further amended pursuant to our prior order to "advise class members that the attorneys' fees, costs, and service award will be deducted from the settlement fund and reduce the recovery of each class member" (Dkt. No. 120). No claim forms are required, as class members will simply be mailed a settlement check. It appears all class members received adequate notice of the settlement and its terms, which supports approval of settlement.

5

As for the adequacy of relief provided, according to the current plan for which approval is sought, the net settlement amount post-deductions to be distributed amongst the class of 69 would be $885,287.02, meaning an average recovery of $12,830.25 per member, with the highest individual payment at $19,695.49. The PAGA settlement amount is not included in that net settlement amount: the settlement agreement separately allocates $40,200 of the $1.3 million towards plaintiff Rhodes's representative claim for PAGA penalties, and the foregoing calculation of the net settlement amount counts the PAGA settlement amount as a deduction to arrive at the figure of $885,287.02 (Lee Decl. ¶¶ 11–13). Counsel represents that the PAGA settlement "constitutes 40% of the realistic maximum exposure of $100,500 in PAGA penalties" (Hayes Decl. ¶ 64). In accordance with California Labor Code Section 2699(i), of the $40,200 PAGA settlement amount, 75% will be paid to the Labor and Workforce Development Agency and 25% will be distributed to the aggrieved employees of the PAGA claim, of which there are 58, to be allocated according to pay periods worked during the PAGA period. The average individual PAGA payment to each aggrieved employee is $173.28 (Lee Decl. ¶ 14). This order finds that these numbers provide more than mere nominal relief within context of this action.

As for the implications of the settlement terms, the settlement amount is non-reversionary, and there is no clear sailing arrangement that predetermines attorney's fees and other awards (Hayes Decl. ¶ 37; Mem. Supp. Final Approval 20). Plaintiffs' counsel represents that they have made "all of the modifications previously required by the Court" when a proposed settlement was rejected in June 2022 (Hayes Decl. ¶ 37). Crucially, this included modifying the release of claims — and in particular the PAGA claim — to more properly reflect our operative complaint (Hayes Decl. ¶ 29). Individual settlement amounts for both the class and PAGA claims are determined based on the number of pay periods worked, and uncashed settlement checks will be deposited with this district court's Unclaimed Funds Registry. *See About Unclaimed Funds*, U.S. Dist. Ct. N. Dist. Cal., https://cand.uscourts.gov/about/clerks-office/finance/unclaimed-funds-information/. No objections have been received, and no class member appeared at the final fairness hearing.

6

There are no signs of inequitable treatment between class members or collusion, and the settlement appears negotiated at arm's length and adequate in light of the foregoing. Our evaluation prescribed by Rule 23 thus warrants approval of settlement. The motion for class settlement is **GRANTED**.

### 2. FEES, COSTS, AND AWARDS.

Class counsel seek $325,000 in attorney's fees, representing 25% of the total settlement amount. Consideration of attorney's fees is "subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting FRCP 23(e)). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Our court of appeals "has established 25% of the common fund as a benchmark award for attorney fees." *Ibid.* Counsel further represent that their lodestar calculation results in an amount of $540,750, which exceeds the requested amount. The "negative multiplier suggests that the fee request is reasonable," and this order agrees. *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020) (Judge Haywood S. Gilliam, Jr.) (citations omitted). The request for attorney's fees of $325,000 is approved, with half to be awarded now and the remaining half to be awarded only after distribution of the settlement fund to the class is completed.

Class counsel further seek costs in the amount of $37,512.98, which were incurred over two-and-a-half years of litigation. Additionally, the settlement administrator Phoenix Class Action Administrators seeks $7,000 in fees. This order finds no fault in the compendium of evidence for such costs, and approves the award of costs to both class counsel and the settlement administrator as reasonable. Should Phoenix seek additional costs however, a new motion must be brought to explain why such costs are merited.

Finally, plaintiff Stickles is the appointed class representative and requests a service award of $5,000. This presents a problem. As explained in the judge's notice and order regarding class settlement, the operative question remains: "If the proposed class settlement by

7

itself is not good enough for the named plaintiff, why should it be good enough for absent class members similarly situated?" (Dkt. No. 76). This is the fundamental tension between "service awards" — sometimes referred to as "incentive awards" — and a representative plaintiff's fiduciary duty to the class. There is a risk that such awards can cloud the judgment of a class representative whose purpose is to determine whether a settlement is fair and reasonable to *all* class members. Class actions worked fine before the advent of incentive awards, and they will continue to do so without them. Plenty of incentives for meritorious litigation exist outside of a service award. Indeed, given the terms of the settlement and as plaintiffs' counsel recognizes, any denied amount of service award "would simply increase the net settlement fund available for distribution to the Settlement Class" (Mem. Supp. Final Approval 20). This order finds that $500 is the most that could be awarded here without risk of clouding a class representative's judgment. To the extent stated in the foregoing, the motion for fees, costs, and awards is **GRANTED**.

## CONCLUSION

For the reasons stated herein and to the extent previously stated on the record and reflected herein, the motions for final approval of class settlement and for related fees, costs, and awards are **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 11, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8